UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

**IN ADMIRALTY**

-------------------------------------------------------X
D'AMICO DRY LIMITED,

               Plaintiff,

   - against -

PASHA FINANCE, INC.,
as owners of the M/T CAPE TALARA

               Defendant.
-------------------------------------------------------X

## <u>VERIFIED COMPLAINT</u>

Plaintiff, D'AMICO DRY LIMITED ("Plaintiff" or "d'Amico Dry"), by and through the undersigned attorneys, as and for its Verified Complaint against the Defendant, PASHA FINANCE, INC. ("Pasha"), allege, upon information and belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

2.     Venue is proper in this district because there is or will be during the pendency of this action property of or due and owing to the Defendant within or moving through this district in the form of the M/T CAPE TALARA, as will be more fully discussed herein.

3.     At all material times to this action, Plaintiff d'Amico Dry was and is a foreign company duly organized and operating under foreign law with an office and place business in Italy.

4.     Defendant Pasha was and is a foreign corporation or other business entity organized and existing under foreign law with an office and place of business at 6 Roupel Street, Athens-Lamia Road, Kifisia, 145 64 Athens, Greece.

5.      Primera Maritime (Hellas) Ltd. ("Primera") was a foreign corporation or other business entity organized and existing under foreign law with a registered office at 80 Broad Street, Monrovia, Liberia and a business address of 6, Roupel Street, 145 64 Kifissia, Athens, Greece.

6.      The M/T CAPE TALARA is a motor vessel bearing IMO number 569994.

7.      At all material times, Defendant Pasha was and is the owner of the M/V CAPE TALARA and is organized under foreign law and incorporated in the Marshall Islands with a registered address of: Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, The Marshall Islands MH 96960.

8.      It is believed that the M/T CAPE TALARA (property of the Defendant) is or will be within or moving through this district during the pendency of the action.

9.      It is further believed that in addition to the M/T CAPE TALARA itself, Defendant's bunkers, fuel, goods, chattels, appurtenances, equipment, effects, and other property, tangible or intangible, in excess of the amount sought to be attached belonging to, due or being transferred to, from, or for the benefit of the Defendant including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit, will be moving through, or within this district during the procedure of this action.

## BREACH OF THE FORWARD FREIGHT AGREEMENT

10.     By way of a Forward Freight Agreement dated September 2, 2008 ("FFA"), Primera agreed to buy and d'Amico Dry agreed to sell freight futures for 45 days within the months of January, February and March 2009 respectively, with monthly settlement.

11.     The FFA provided for settlement dates of January, February and March 2009.

2

12.     Despite due demand for payment, Primera failed to remit payment to Plaintiff in respect of the January 2009 contract month in breach of the FFA.

13.     As a result, Plaintiff became entitled to terminate the FFA and on or about February 23, 2009, Plaintiff terminated the FFA.

14.     As a result of Primera's breach of the FFA contract, Plaintiff has suffered a loss in the total principal sum of $1,752,973.30 exclusive of interest, costs and attorneys' fees.

**ENGLISH HIGH COURT JUDGMENT**

15.     Pursuant to clause 15 of the FFA, all disputes arising thereunder were to be submitted to the English High Court of Justice with English law to apply.

16.     Plaintiff commenced proceedings against Primera in the High Court of Justice, Queen's Bench Division, Commercial Court under Claim No. 2009 Folio 218 in accordance with the FFA contract.

17.     On June 19, 2009, the High Court of Justice, by The Honorable Mr. Justice Flaux, entered a final unappealable judgment against Primera in the sum of $1,766,278.54 (comprising the principal due of US$1,752,973.30 together with compound interest at the contractual rate accrued up to June 19, 2009). Legal costs in the amount of GBP 17,000 which is equal to the sum of $28,056.39 were also awarded.

18.     Despite due demand, Primera has failed to pay the judgment entered against it. Interest continues to run at the English post-judgment rate of 8% per annum. As such, the following sums remain due and owing to the Plaintiff.

| | | |
|---|---|---|
| A. | Total Principal Claim: | $1,752,973.30 |
| B. | Fees and costs as awarded in UK High Court: | $28,056.39 |
| C. | Interest to date on Claims: | |

| | |
|---|---|
| *Interest awarded in High Court* *Judgment to June 19, 2009* | *$13,305.24* |
| *Interest from June 19, 2009 to* *January 10, 2015 at the U.K.* *post-judgment interest rate of 8%* | *$798,478.85* |
| **Total** | **$2,592,813.58** |

## SOUTHERN DISTRICT OF NEW YORK PROCEEDINGS

19.     On September 9, 2009, Plaintiff d'Amico commenced an action against Primera in the United States District Court for the Southern District of New York with the filing of a verified complaint.

20.     This action sought recognition and enforcement of the English High Court's judgment.

21.     Primera appeared through counsel and answered the complaint on October 19, 2009.

22.     On November 11, 2009, Primera made a motion to dismiss the complaint arguing: 1) that an action seeking recognition and enforcement of a foreign judgment did not give rise to admiralty jurisdiction, and 2) that an FFA was not a maritime contract under U.S. law.

23.     While the motion to dismiss was pending, Plaintiff d'Amico Dry sought and obtained leave of court to amend its complaint to include additional defendants believed to be the alter egos of Primera.  Defendant Pasha Finance was one of these additional parties added to the New York action.

24.     These newly named defendants appeared through counsel and joined in Primera's motion to dismiss.  In the New York action, Primera is represented by Squire Patton Boggs (US) LLP.  Counsel for the alter-ego "Finance Defendants" including Pasha Finance is Blank Rome and the attorneys for the other non-"Finance" Defendants are Chalos & Co.

25.     After taking evidence and briefing from the parties, the court (Koeltl, J.) granted the motion to dismiss the complaint on the ground that an action to recognize and enforce a foreign judgment from a non-admiralty court did not give rise to admiralty jurisdiction.

26.     Plaintiff d'Amico Dry appealed this decision to the United States Court of Appeals for the Second Circuit.

27.     The Court of Appeals reversed the District Court's decision and held that federal admiralty jurisdiction extends to actions seeking recognition and enforcement of foreign judgments which themselves adjudicated a claim that would have given rise to admiralty jurisdiction under standards of U.S. law.

28.     The Court of Appeals remanded the case to the District Court for a determination of whether an FFA is a maritime contract under U.S. law.

29.     On November 7, 2014, Primera and the alter ego Defendants renewed their motion to dismiss on the ground that an FFA is not a maritime contract.

30.     Plaintiff d'Amico Dry opposed the motion and the matter is currently fully briefed, waiting for further notice from the court.

**ALTER EGO RELATIONSHIP BETWEEN PASHA AND PRIMERA**

31.     Upon information and belief, Defendant Pasha is a shell-corporation through which Defendant Primera conducts its business.

32.     Upon information and belief, Defendant Pasha has no separate, independent identity from Primera.

33.     Pasha shares a common address with Primera at 6 Roupel Street, Athens-Lamia Road, Km 17, Kifisia, 145 64 Athens, Greece and a common fax number of +30 210 620 2820.

34.     Upon information and belief, Pasha and Primera are and/or were both controlled by Paul and Nikolaos Coronis (the "Coronis family").

35.     By a Facilities Agreement dated May 21, 2008 ("May Facilities Agreement") as amended and/or supplemented by a supplemental agreement dated October 15, 2008 and as further amended and/or supplemented by a second supplemental agreement dated February 6, 2009, Pasha along with several other non-parties took out a loan to finance various vessels together as joint and several borrowers.  Attached hereto as Exhibit 1 is a true and accurate copy of the May Facilities Agreement.

36.     The May Facilities Agreement indicates that Primera was the corporate guarantor for the loan.

37.     The May Facilities Agreement further indicates that Paul and Nikolaos Coronis personally guaranteed the loan.

38.     The address for service of all notices on all of the borrowers, including Pasha, in the May Facilities Agreement is listed as c/o Primera Maritime Ltd. at Primera's 6 Roupel Street address in Athens.

39.     According to the May Facilities Agreement, Evangelos Bairactaris was the attorney designated to execute the documents on behalf of Pasha and Primera.

40.     Paul Coronis was a director of Primera until at least 2008.

41.     Although submitting a letter of resignation on or about November 15, 2008, Paul Coronis is believed to have conducted business with Primera through at least October 2009.

42.     Paul Coronis was a personal guarantor on the loan agreement for the CAPE TALARA.

43.     Primera was the corporate guarantor on the loan agreement for the construction of the CAPE TALARA.

44.     The address for Primera and Pasha is 6 Roupel Street, Athens-Lamia Road, Km 17, Kifisia, 145 64 Athens, Greece.

45.     Primera and Pasha also share a common fax number of +30 210 620 2820.  See Exhibit 2, a copy of the ISOA Master Agreement.

46.     The "person in charge" listed on the FFA between Plaintiff d'Amico and Primera is Paul Coronis.

47.     Primera is the alter ego of Defendant Pasha because Primera dominated and disregarded Pasha's corporate form such that Primera is actually carrying on the business of Pasha as if it was Pasha itself.

48.     Upon information and belief, Primera has in the past used companies under its control to insulate itself from creditors.

49.     Upon information and belief, non-party JPC Investments S.A. ("JPC") acted as paying agent, or receiving agent, or arranges for other non-parties to satisfy the debts and obligations of Primera and/or receive payments being made to Primera.

50.     Upon information and belief, Primera used JPC as a "pass through" entity so that it could insulate itself from creditors relating to its commercial obligations.

51.     Upon information and belief, JPC and Primera share a common address at 6 Roupel Street, Athens-Lamia Road, Km 17, Kifisia, 14564 Athens.

52.     Although JPC was not named in the FFA, it paid an installment of the settlement monies owing to Plaintiff from Primera.  The payment also demonstrates that JPC uses the same address as Primera. Further, the payment by JPC came from Piraeus Bank in Athens Greece.

53.     It is not common practice in the maritime industry for an independent company to pay another company's debt, where it has no formal relationship to the underlying contract.

54.     Upon information and belief, in order to circumvent a third party debt issued against it by the English Court, Primera instructed a third party debtor with a different account name.

55.     As further evidence of injustice, the Plaintiff refers the Court to the decision of Judge Ron Clark in relation to a case by Flame, Inc. against another Primera alter-ego, Camela Navigation, Inc.  In that case, Flame obtained an English judgment on their breach of an FFA claim at approximately the same time as d'Amico Dry.  After denying Camela's Rule E 4(f) motion, the Court tried the alter-ego case on an expedited basis.  (Here, this attachment is for security only.  The merits of d'Amico's alter-ego claim against Pasha will proceed in New York).  However, utilizing the Fifth Circuit's alter-ego test, Judge Clark made the following Findings of Fact:

a.      TMT Asia Ltd. owed Primera $709,242.98 under an FFSA for September 2009.  *Id.*, Ex. R, at ¶ 19.

b.      Primera, after first failing to issue invoices for payment so funds would be unavailable to creditors, issued an invoice to TMT for the September 2009 amount due.  TMT was told to pay the funds to an account in the name of Primrose Shipping, Ltd.  *Id.*, Ex. R, at ¶ 20.

c.      TMT made this payment by entering into a "netting off" agreement with Primera and Meadway Shipping and Trading Co.  On October 6, 2009, Paul Coronis sent an email to individuals at TMT and Meadway confirming this agreement between the parties.  *Id.*, Exs. L, R, at ¶ 21.

d.      This agreement noted that Meadway owed a debt to TMT in the amount of $508,072.46.  Under this agreement, TMT would deduct $508,072.46 from its debt with Primera – leaving a balance of $201,170.52 – and, in return, Meadway would pay Primera $406,457.96.  *Id.*, Exs. L, R at ¶ 22.  The money that both TMT and Meadway would pay Primera was actually paid to the Primrose account.  *Id.*, Ex. R, at ¶¶ 25, 26.

e.   The amount Meadway was to pay to the Primrose account was apparently later reduced to $388,228.98.  *Id.* at Ex. M.

f.   The sole director of Primrose, Christos Georgopoulos, is also an employee of Primera.  Camela Hearing Ex. 99, ¶ 5(a).

g.   As a result of this arrangement, all three parties benefitted.

   i.   TMT discharged $508,072.46 of its debt to Primera through Meadway's $406,457.96 – later reduced to $388,228.98 – payment to the Primrose account.

   ii.   Meadway's $508,072.46 debt to TMT was discharged by paying $388,228.98 to the Primrose account.

   iii.   As these funds were paid to the Primrose account, instead of to Primera directly, they were not assets which could be seized by Primera's creditors.

(Exhibit 3, *Flame v. M/V LYNX*, 1:10-CV-278 (E.D. Tx., Aug. 6, 2010 at p. 7).

56.   The Court went on to conclude as follows:

The court concludes that the arresting parties have met their burden to demonstrate that continuing  to treat Camela as a separate entity would promote injustice.  While the court's concerns regarding the Liberian liquidation have been somewhat lessened by Camela's presentation at the July 27 hearing, there remains strong evidence in the record that Primera has attempted to dissipate assets through the Meadway/TMT agreement.

Under these facts, it would be unjust to permit Primera to escape its legal obligations by placing one of its assets in the hands of an alter ego subsidiary.

(Exhibit 3, at 10-11).

57.   It bears noting that the general maritime law of  the Second Circuit does not require evidence of injustice as an alter-ego finding.

58.   Primera is believed to have engaged in several other "netting arrangements" whereby it instructs parties owing it money to pay other accounts or satisfy Primera's debts rather than paying Primera directly.

59.     Primera issued invoices to at least one debtor instructing it to pay monies to another account in the name of an unrelated party.

60.     The purpose of these arrangements was to conceal funds and frustrate creditors' efforts to collect legitimate debts.

61.     While not directly involving Pasha, such transactions demonstrate the Primera group of companies' loose corporate structure and intent to conceal assets.

62.     The purpose of these arrangements was to hide monies and debts owed to Primera to conceal them from creditors and avoid the English Court's orders.

63.     Primera and Pasha's beneficial owner, Paul Coronis, organized for all of these arrangements.

64.     Many of the same allegations found here were pled in the Verified Complaint the United States District Court for the Central District of California in another action filed by Flame entitled *Flame S.A. v. Pasha   Finance Inc.,* 10 CV 5245 (GW)(MANx) (Exhibit 4).   In that action, Flame was represented by the same attorney who now represents Pasha Finance in the New York action, William Bennett, formerly of Bennett, Guiliano, et al and now of Blank Rome.

**RULE B ATTACHMENT**

65.     Although Pasha Finance has registered with the Texas Secretary of State since August 2, 2010 as a foreign for-profit corporation and appointed an agent for service of process in Beaumont, Texas (Eastern District of Texas), Pasha Finance is not otherwise found in the district. Mere registration and the appointment of an agent for service of process is not sufficient to be "found" within the district.   *Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 181-182 (5th Cir. 1992); *White Rosebay Shipping S.A. v. HNA Group Co., Ltd.,* 2012 WL 6858329 (S.D. Tx. Dec. 5, 2012).   Primera is not registered in Texas or found here in any way.

66.     Interestingly, the Texas Franchise Tax Public Information Report for Pasha which was filed on May 9, 2014, was filed by an attorney at Chalos & Co. and shows the Chalos & Co. address as Pasha's mailing address.   Chalos & Co. represents the allegedly unrelated non-"Finance" Defendants in the New York action and does not represent Pasha Finance in that case.

67.     Defendant Pasha cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, including but not limited to the M/T CAPE TALARA, its engines, tackle, equipment, appurtenances, bunkers, fuel, goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, and other property, tangible or intangible, on board or in the district.

68.     d'Amico Dry's alter-ego case seeking a declaration that Pasha Finance is responsible for the debts of Primera is on-going and, as previously noted, part of a larger litigation.   The ultimate alter-ego judgment should be issued in the New York action.   The security obtained by this attachment should stand as a security for that potential New York judgment.

69.     If d'Amico Dry is successful in defeating the  Renewed Motion to Dismiss in the New York action, it is estimated that the London judgment will be confirmed in July/August 2015.  The alter-ego case can then be expected to continue for another year thereafter before a final judgment is entered.  Thus, additional interest of 8% above the value of the case today is a reasonable sum for attachment purposes (one-half year at 8% per annum, and 1 year at 4% per annum thereafter).  Thus, the amount to be secured should be $2,800,000.00.

70.     The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any property of the Defendant including the M/T CAPE TALARA as well as any property held on the M/T CAPE TALARA or by any garnishees within the District for the purpose of obtaining security for Plaintiff's New York judgment which confirms the English judgment and also declares Pasha Finance to be the alter-ego of Primera, and obtaining personal jurisdiction over Defendant Pasha.

**WHEREFORE**, Plaintiff prays:

A.      That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint, failing which  default judgment be entered against them in the sum of  **$2,800,000.00.**

B.      That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching the M/T CAPE TALARA as well as any and all bunkers, fuel, goods, chattels, credits, letters of credit, bills of lading, appurtenances, effects, debts and monies, or other property, tangible or intangible, up to the amount of **$2,800,000.00**  belonging to, due or being transferred to, from, or for the benefit of the Defendant, including but not limited to the M/T CAPE TALARA as well as such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for their benefit at, moving through, or within the possession, custody or control of the M/T CAPE TALARA or any banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the

same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Verified Complaint;

    C.    That this Court recognize and confirm any judgment in Plaintiff's favor against the Defendant as a judgment of this Court;

    D.    That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

    E.    That the Plaintiff has such other, further and different relief as the Court deems just, proper and equitable.

Respectfully submitted,

*Attorneys for Plaintiff d'Amico Dry Ltd.*

William A. Durham
State Bar No. 06281800
Fed. ID No. 4172
durham@easthamlaw.com
James T. Bailey
Fed. ID No. 30347
bailey@easthamlaw.com
Alejandro Mendez-Roman
Fed. ID No. 2295449
mendez@easthamlaw.com
Eastham, Watson, Dale and Forney
The Niels Esperson Building
808 Travis Street, Suite 1300
Houston, TX  77002
(713) 225-0905 – Telephone
(713) 225-2907 – Fax