## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **D'AMICO DRY LIMITED,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **C.A. No. 4:15-CV-0039** |
| | § | **ADMIRALTY** |
| **PASHA FINANCE, INC.** | § | |
| **As owners of the M/T CAPT TALARA,** | § | |
| | § | |
| **Defendant.** | § | |

### <u>DEFENDANT PASHA FINANCE, INC'S MOTION TO VACATE MARITIME RULE B ATTACHMENT AND REQUEST FOR EMERGENCY RELIEF</u>

## **TABLE OF CONTENTS**

Page

I.  PRELIMINARY STATEMENT .................................................................1

II.  BACKGROUND AND PROCEDURAL HISTORY................................2

    A.  Pasha's Texas Contacts...................................................................2

    B.  Plaintiff's Prior Actions Against Primera ....................................2

    C.  The Current Dispute in the Southern District of Texas ...............3

III.  ARGUMENT..........................................................................................4

    A.  Pasha Requests An Emergency Hearing on This Application................4

    B.  Plaintiff Carries the Burden to Show Why the Attachment Should be
Maintained, Failing Which the Court Must Vacate the Attachment ......................5

    C.  Pasha was Clearly "Found" Within the District at the Time the Verified
Complaint was Filed ...................................................................................7

    D.  Plaintiff Has Failed to Plead a *Prima Facie* Alter Ego Claim Against
Pasha ..................................................................................................10

        i.  General Principles Surround Alter Ego and "Piercing the Corporate
Veil".............................................................................................10

        ii.  The *Oxford Capital* factors do not Demonstrate that an Alter Ego
Relationship Existed Between Pasha and Primera....................................13

    E.  It is Inappropriate for Plaintiff to have Obtained an Attachment and
Thereafter Request that a Ruling on the Alter Ego Claims be Assigned to
the Southern District of New York .......................................................14

    F.  Plaintiff's Efforts to Seek and *Ex Parte* Order of Attachment Was
Wrongful; Requires Vacatur of the Attachment; and Mandates An Award
for Costs and Expenses Under the Circumstances...............................15

IV.  CONCLUSION......................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A. Coker & Co., LTD. v. Nat'l Shipping Agency Corp., et al.,*
1999 WL 311941, *1 (E.D.La. May 17, 1999)...................................................................6

*Alpine View Co. Ltd. v. Atlas Copco., AB,*
205 F.3d 208 (5th Cir. 2000) ..........................................................................................11

*Amber Int'l Navigation, Inc. v. Repinter Int'l Shipping Co., S.A.,*
2009 WL 1883251 (S.D.N.Y.2009)....................................................................................8

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd,*
460 F. 3d 434 (2d Cir. 2006)..........................................................................................5, 6

*Austral Asia PTE, Ltd. V. SE Shipping Lines Pte. Ltd.,*
2012 WL 2567149 (E.D. La. Jul. 2, 2012) ....................................................................11

*Brown v. Slenker,*
220 F. 3d 411 (5th Cir. 2000) ..........................................................................................7

*Chiquita Int'l Ltd. v. MV Bosse,*
518 F. Supp 2d 589, 597 (S.D.N.Y. 2007).......................................................................6

*Diesel Specialists v. M/V Mohawk Transp., LLC.,*
2009 WL 1036085 (E.D.La. April 17, 2009) (Engelhardt, J.)......................................6

*Driving Force Technologies Inc. v. Pan da Inc.,*
2012 WL 1645634 (E.D. Tex May 10, 2012)................................................................11

*Emeraldian Ltd. Partnership v. Wellmix Shipping Ltd.,*
2009 WL 3076094, at *3 (S.D.N.Y. Sept.28, 2009).....................................................10

*Flame v. Pasha Finance, Inc.*
2010 WL 2902774, *3 (C.D.Cal. July 26, 2010).............................................................8

*Flame, S.A. v. M/V Lynx,*
USDC-SDTX Civ. Act. No. 10-cv-278 ..........................................................................12

*Gibraltar Savings v. L.D. Brinkman Corp.,*
860 F.2d 1275 (5th Cir.1988), cert. denied, 490 U.S. 1091, 109 S.Ct. 2432, 104
L.Ed.2d 988 (1989)....................................................................................................10, 11

*Heidmar, Inc. v. Anomina Ravennate Di Armento Sp. A. of Ravenna,*
132 F. 3d 264 (5th Cir. 1998) ..........................................................................................7

*Indagro S.A. v. Bauche S.A*,
    652 F. Supp. 2d 482, 485 (S.D.N.Y. 2009)......................................................6

*Jo Tankers v. HGB Logistics, L.L.C.*,
    2013 WL 104827 S.D. Tex. Jan. 8.........................................................10, 11, 12

*LaBanca v. Ostermunchner*,
    664 F. 2d 65 (5th Cir. 1981) ....................................................................7

*Naftomar Shipping and Trading Co. v. KMA Intern., S.A.*,
    2011 WL 888951 (S.D.Tex. March 3, 2011) (Rainey, J.) .........................6, 10

*Oldendorf Carriers GmbH & Co. v. Grand China Shipping (Hong Kong) Co, Ltd.*,
    2013 WL 162.8385 (S.D. Tx. March 28, 2013) (Owsley, J.) ...................13

*Oxford Capital Corp. v. United States*,
    211 F. 3d 280 (5th Cir. 2000) ...........................................................12, 13

*Proshipline v. M/V BELUGA REVOLUTION*,
    2007 WL 4481101 ..................................................................7, 8, 15

*SLS Shipbuilding Co. Ltd, v. Ionia Management, SA*,
    2011 WL 2652365 (SDTX July 5, 2011)...............................................5

*Subway Equip. Leasing Corp. v. Sims (Matter of Sims)*,
    994 F.2d 210, 218 (5th Cir.1993) .......................................................10

*United States v. Jon–T Chemicals Inc.*,
    769 F.2d. 686 (5th Cir.1985) .............................................................10

*White Rosebay Shipping S.A. v. HNA Group Co. Ltd.*,
    2013 WL 441014 (S.D. Tex., Feb 5. 2013)(Ramos, J.) ..........................9

*Williams v. McAllister Bros., Inc.*,
    534 F. 2d 19 (2d Cir. 1976)...............................................................11

*Williamson v. Recovery, Ltd. Partnership*,
    542 F.3d 43 (2d Cir. 2008)................................................................6

**OTHER AUTHORITIES**

MOORE'S FEDERAL PRACTICE, 3d, Vol. 29 §705.04[2][b], n.35........................15

Rule B ........................................................................................... passim

Rule (B)(1)...........................................................................................7

Rule B(1)(b).........................................................................................7

Rule E(4)(f)............................................................................................1, 4, 5, 6

iv

900200.00001/60716691v.1

## I.     PRELIMINARY STATEMENT

Pursuant to Rule E(4)(f) of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Admiralty Rules"), Defendant Pasha Finance, Inc. ("Pasha") by and through undersigned counsel respectfully submits this Motion to Vacate the Court's *ex parte* Order of Attachment issued on January 9, 2015 (Doc. No. 3) pursuant to Supplemental Admiralty Rule B ("Rule B") and to dismiss the Verified Complaint filed by plaintiff D'Amico Dry Limited ("Plaintiff") in its entirety with prejudice. Pasha respectfully submits that the *ex parte* Order of Attachment was improperly obtained by Plaintiff.

The Order of Attachment should be vacated, and the action dismissed as against Pasha. First and foremost, at the time Plaintiff applied for the attachment under Rule B, it knew or should have known that Pasha was, in fact, "found" within the Southern District of Texas at all times relevant herein by virtue of Pasha's **prior** registration with the Texas Secretary of State some 4 ½ years ago, as well as its appointment of "Corporate Creations Network Inc." as its agent for service of process within the Southern District of Texas two days prior to the filing of the complaint.[1] As such, the fact that the Rule B action was subsequently filed against Pasha is improper, as the rule itself first requires a defendant to "not be found within the District" before it can be utilized.

In addition to the above, Plaintiff's principal Rule B allegation that Pasha is the alleged "alter ego" of an entity known as Primera Maritime (Hellas) Ltd. ("Primera") is totally deficient and unsupported by the paper-thin "facts" asserted in Plaintiff's Complaint.  While Plaintiff makes vague and conclusory alter ego allegations against Pasha, it fails to allege facts which

---

[1]  Indeed, the address of Pasha's registered agent for service of process (4265 San Felipe, Suite 1100, Houston, TX 77027)  is only located a mere six miles from this Court. See Exhibit "A," Pasha Finance, Inc. Secretary of State corporate registration materials.

properly support a *prima facie* basis to pierce Primera's corporate veil, let alone hold Pasha liable to a contract to which it was not a signatory.    In sum, Plaintiff's vague alter ego allegations in this action fail as a matter of law, and the Rule B attachment against the M/V CAPE TALARA ("Vessel") should be vacated.   For the reasons noted below, we respectfully request this Honorable Court enter an Order vacating the Order of Attachment and dismiss Plaintiff's Verified Complaint in its entirety.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Pasha's Texas Contacts

Pasha is a foreign corporation that is engaged in the maritime transportation industry.   It is the disponent owner of the Vessel at issue, which has called to the ports of Texas some twelve times over the past four years.   See Exhibit "B," CAPE TALARA port call list.   Pasha itself has been registered to do business with the Texas Secretary of State since **August 25, 2010**.   See Exhibit "A," Pasha Texas SOS registration materials.   Indeed, on **January 7, 2015**, Pasha filed a "Certificate of Filing" with the Texas Secretary of State to document the changing of its designated agent for service of process within the State to Corporate Creations Network, Inc., which is located within the Southern District of Texas.   See Exhibit "A." Prior to that change, Pasha's agent for service of process had been located in various locations throughout Texas, as has been admitted by Plaintiff (see Complaint, Para. 65).

### B.    Plaintiff's Prior Actions Against Primera

Plaintiff's alter ego claims against Pasha are far from clear, which in turn supports Pasha's Motion to Vacate.   By way of reference to the Verified Complaint, Plaintiff first claims that it entered into a "Forward Freight Agreement" dated September 2, 2008 with *Primera* to sell freight fixtures for a period of 45 days during 2009.   See Rec. Doc. 1, Para. 10.   Pasha was <u>not</u> a

2

party to the Forward Freight Agreement, and it did not guarantee Primera's performance under that alleged agreement.  Furthermore, the Vessel at issue is not owned by Primera and had nothing to do with the Forward Freight Agreement at issue.  Putting those facts aside for the moment, disputes allegedly arose between Plaintiff and Primera, and Plaintiff claims to have eventually obtained a judgment against Primera from the High Court of Justice, Queen's Bench Division, Commercial Court in London (the "English Judgment") on or about June 18, 2009, which it claims remains unsatisfied.

As noted in Plaintiff's Complaint at Paras. 19 – 30, on September 9, 2009, Plaintiff commenced an action against Primera in the United States District Court for the Southern District of New York in an effort to have that Court recognize and enforce the English Judgment. See *D'Amico Dry Limited v Primera Maritime (Hellas) Limited*, USDC-SDNY, Case No. 09-cv-07840. Thereafter, Plaintiff amended its complaint to assert alter ego claims against additional defendants, including Pasha. However, the alleged alter ego relationship between Pasha and Primera has **not** been submitted to the Southern District of New York (Koeltl, J) for consideration.

### C.       The Current Dispute in the Southern District of Texas

On **January 9, 2015** (i.e, two days *after* Pasha had changed its agent of service of process to an agent specifically located in the Southern District of Texas, see Exhibit "A"), Plaintiff filed its Complaint against Pasha in this Court and thereafter obtained an Order authorizing the attachment of Pasha's property within the district, to wit, the M/V CAPE TALARA.  The sum and substance of Plaintiff's alter ego allegations insofar as they pertain to Pasha are that Primera is the "*alter ego of defendant Pasha because Primera dominated and disregarded Pasha's corporate form such that Primera is actually carrying on the business of*

3

*Pasha as if it was Pasha itself.*" See Verified Complaint, Para. 47.  However, aside from mere innuendo based only upon "information and belief," Plaintiff fails to assert any specific factual allegations whatsoever in the Complaint that Primera and Pasha are in fact "alter egos," let alone facts to suggest that Pasha was connected in any way whatsoever to the Forward Freight Agreement dispute at issue.

To be sure, Pasha's Vessel was wrongfully attached by reason of the *ex parte* Order. Although Primera may be the sole party liable for the English Judgment, Primera does not own or control the Vessel.  The Vessel was merely attached because its actual owner, Pasha, is allegedly the alter ego of Primera, an allegation that is wholly refuted and rejected by Pasha.  In short, the Verified Complaint is supported by nothing more than conclusory, unsupported and unsupportable allegations.  As such, we respectfully request this Honorable Court vacate the Order because Plaintiff has failed to satisfy the *prima facie* pleading requirements of Rule B.

For the following reasons, Pasha seeks an Order from this Court vacating the prior Rule B Order of attachment, to be obtained at an emergency hearing as soon as possible.

## III.   ARGUMENT

### A.   Pasha Requests An Emergency Hearing on This Application

To ensure the constitutionality of the attachment mechanism provided by Rule B, Supplemental Admiralty Rule E(4)(f) provides any person whose property has been attached pursuant to Rule B an opportunity to appear before a district court to contest the attachment:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

4

Fed. R. Civ. P. Supp. R. E(4)(f).  This rule speaks in mandatory terms and is necessary to give a claimant its day in court after Plaintiff has been able to obtain *ex parte* relief, outside of the adversarial system with minimal oversight.  The Advisory Committee to the Federal Rules has stated that at the Rule E(4)(f) hearing the interested party can attack "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp. Rule E(4)(f), Advisory Committee's note.  And, as Your Honor noted in *SLS Shipbuilding Co. Ltd, v. Ionia Management, SA*, 2011 WL 2652365, *1 (SDTX July 5, 2011), if property is attached and garnished under **Rule B**, the property owner is "entitled to a prompt hearing at which the plaintiff [is] required to show why the arrest or attachment should not be vacated...." Supplemental Admiralty Rule E(4)(f).

It is paramount that this matter be heard as soon as possible.  If the Vessel (which is scheduled to complete cargo operations in Houston on January 13, 2015 at 2000 hours) is not promptly released, it will cause Pasha irreparable harm.  Accordingly, an immediate hearing is necessary to prevent further harm to Pasha.  To that end, Pasha may seek a claim against Plaintiff for damages as a result of the wrongful attachment at issue.

### B.   Plaintiff Carries the Burden to Show Why the Attachment Should be Maintained, Failing Which the Court Must Vacate the Attachment

Rules B and E of the Supplemental Admiralty Rules authorize a court to issue an order of maritime attachment if the plaintiff satisfies the rules' filing and service requirements and can show that (1) plaintiff has a valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property can be found within the district; and (4) there is no statutory or maritime bar to the attachment.  *SLS Shipbuilding Co., Ltd. V. Ionin Mgmt., S.A.*, 2011 WL 2652365 (S.D.Tex. Jul. 5, 2011), see also *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd*, 460 F. 3d 434, 445 (2d Cir. 2006).  To that end, "Rule

5

E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E." *Aqua Stoli*, 460 F. 3d at 445, n. 5. Accordingly, the burden is squarely on Plaintiff to show that the attachment made under the Court's order was proper.

A motion to vacate a Rule B attachment is decided "based upon whether a *prima facie* claim is shown and the technical requirements for attachment have been met." *Indagro S.A. vs. Bauche S.A*, 652 F. Supp. 2d 482, 485 (S.D.N.Y. 2009), citing *Chiquita Int'l Ltd. v. MV Bosse*, 518 F. Supp 2d 589, 597 (S.D.N.Y. 2007), citing *Aqua Stoli*, 460 F. 3d at 445.  For purposes of a Rule E(4)(f) post-arrest hearing, "[s]uperficial compliance with Rule B, while necessary, is not sufficient in determining whether maritime attachment is appropriate." *Williamson v. Recovery, Ltd. Partnership,* 542 F.3d 43, 52 (2d Cir. 2008).  Rather, "the attaching party must present sufficient evidence to show probable cause for the attachment." *Diesel Specialists v. M/V Mohawk Transp., LLC.,* 2009 WL 1036085, * 1 (E.D.La. April 17, 2009) (Engelhardt, J.); see also *Naftomar Shipping and Trading Co. v. KMA Intern., S.A*., 2011 WL 888951, *3 (S.D.Tex. March 3, 2011) (Rainey, J.)("plaintiff bears the burden to establish probable cause for the arrest")(quoting *A. Coker & Co., LTD. v. Nat'l Shipping Agency Corp., et al*., 1999 WL 311941, *1 (E.D.La. May 17, 1999) (internal citations omitted)).  Thus, a "district court may certainly vacate the [attachment] if it determines, after hearing from both parties, that the requirements of Rule B have not actually been met." *Williamson*, 542 F.3d at 52.

Here, Plaintiff cannot sustain its burden of proving that all of the prerequisites are met, as (1) Pasha was unquestionably "found" in the District at the time the ex parte application was submitted, and (2) the plaintiff has failed to allege *prima facie* evidence of an alter ego relationship between Pasha and Primera.

6

### C.   Pasha was Clearly "Found" Within the District at the Time the Verified Complaint was Filed

It is axiomatic that an attachment under Rule B is only available against defendants who are not found within the District where the attachment is sought.   Rule B itself provides in pertinent part, as follows:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process.

In sum, for purposes of triggering Rule B, "a defendant cannot be found within the district at the time a complaint is filed.  A defendant is present in the district if 1) the defendant can be found within the district in terms of jurisdiction, and 2) the defendant can be found within the district for service of process." *Heidmar, Inc. v. Anomina Ravennate Di Armento Sp. A. of Ravenna*, 132 F. 3d 264, 268 (5th Cir. 1998).  For personal jurisdiction over a non-resident defendant, the Fifth Circuit requires "1) that the defendant has 'minimum contacts' with the forum state; and 2) the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Brown v. Slenker*, 220 F. 3d 411, 417 (5th Cir. 2000).  For service of process, Rule (B)(1) does not permit statewide service of process, but requires that the defendant have an agent present within the federal district.  *LaBanca v. Ostermunchner*, 664 F. 2d 65, 68 (5th Cir. 1981).

With these principles in mind, Plaintiff was not entitled to assert Rule B because Pasha was already "found" within the district when the attachment was filed on January 9, 2015.  To be sure, the time for determining whether a defendant is 'found' in the district is set at the time of the filing of the verified complaint that prays for attachment and the affidavit required by Rule B(1)(b). See *Heidmar*, 132 F.3d at 268.  Further, the presence of an agent for service of process within the district at issue is an important consideration in the Rule B context. See *Proshipline v.*

7

*M/V BELUGA REVOLUTION,* 2007 WL 4481101 (S.D. Tx., Dec. 18, 2007(Froeschner, J.). As of January 9, 2015 (i.e., the date Plaintiff filed its Complaint) Pasha had already been registered to do business with the Texas Secretary of State for almost 4 ½ years.   See Exhibit "A." **Furthermore, Pasha had appointed an authorized agent for service of process in the Southern District of Texas on January 7, 2015, two days prior to Plaintiff's Rule B filing**. As such, at the time the Verified Complaint was filed, Pasha was subject to this Court's personal jurisdiction and otherwise found within the District, for purposes of Rule B.     Rule B was therefore unavailable to Plaintiff.[2]

Notably, "the majority of federal appellate courts that have addressed the issue of whether appointment of an agent of service of process and registration to do business within a state constitutes "consent" to jurisdiction have concluded that such acts do establish consent to jurisdiction." See *Flame vs. Pasha Finance, Inc.* 2010 WL 2902774, *3 (C.D.Cal. July 26, 2010), and cases cited therein.   Indeed, in the aforementioned *Flame* case, the Central District of California (Nagle, MJ) expressly held on virtually identical facts to the case here that Pasha was subject to the Court's jurisdiction as a result of registering to do business with the California Secretary of State and appointing an agent for service of process in the Central District of California.   *Id.*   An identical conclusion is warranted here.   See *Amber Int'l Navigation, Inc. v. Repinter Int'l Shipping Co., S.A.*, 2009 WL 1883251, *8 (S.D.N.Y.2009) ("[t]his Court sees no just reason why plaintiff should be able to attach [defendant's] property in this district [pursuant to Rule B], when it has the full ability to sue [defendant] here.").

---

[2] Counsel for Pasha advised  counsel for Plaintiff of the agent and provided documentation on January 12, 2015. However, Plaintiff refused to voluntarily release the attachment. See Exhibit "C," January 12, 2015 9:18 am email from Jeremy Herschaft to William Durham.

8

Plaintiff has through correspondence with undersigned counsel intimated that the case of *White Rosebay Shipping S.A. v. HNA Group Co. Ltd.*, 2013 WL 441014 (S.D. Tex., Feb 5. 2013)(Ramos, J.) is applicable with respect to the "found within the district" dispute, but that case is distinguishable.

In *White Rosebay*, a plaintiff asserted alter ego claims in the Corpus Christi Division of Southern District of Texas, against a multitude of defendants who were allegedly alter egos of each other.   Unlike Pasha, here, none of the *White Rosebay* defendants had registered to do business in the Southern District of Texas, *let alone* appointed an agent for Service of Process in the district. *Id.*, at *5.   In any event, the *White Rosebay* plaintiff asserted a Rule B against one of the defendants' vessels.  **Six days** before the filing of plaintiff's complaint, an entity known as GCL (which was *not* a defendant in the action) filed papers to do business in Texas and designated an agent for service of process with the Secretary of State. *Id.*, at *5. The defendants went on to claim that, if the alter ego allegations between the defendants were true, then GCL - as a non defendant alter ego - was "found" within the district by virtue of its recent registration and agent appointment and as such the remaining alter ego defendants were themselves "found" in the district as well.   Judge Ramos disagreed, and held that none of the defendants named in the action had an agent present within the Southern District of Texas or the minimum contacts necessary to satisfy the requirements for personal jurisdiction. *Id.*, at * 6.

In contrast to the defendants in *White Rosebay*, defendant Pasha *does* have an agent for service of process in the Southern District of Texas, and it has been registered to do business in Texas for over 4 ½ years.  See Exhibit "A." Indeed, since 2011, the Vessel has called to the state of Texas over twelve times.   See Exhibit "B."   In sum, there is no question that Pasha has

9

submitted to the jurisdiction of the state of Texas. Accordingly, the Rule B attachment should be vacated.

**D.      Plaintiff Has Failed to Plead a *Prima Facie* Alter Ego Claim Against Pasha**

In the present case, it is undisputed that Plaintiff does not have a maritime claim *directly* against Pasha, as Pasha was not a signatory to the Forward Freight Agreement between Plaintiff and Primera. Thus, whether Plaintiff has shown a valid *prima facie* admiralty claim against Pasha hinges on whether it has sufficiently alleged that Pasha acted as the "alter ego" of Primera. Critically, "[t]o state a *prima facie* claim for alter ego liability, plaintiffs must make specific factual allegations from which alter ego status can be inferred; conclusory allegations are insufficient." *Naftomar*, 2011 WL 888951, at *5 (quoting *Emeraldian Ltd. Partnership v. Wellmix Shipping Ltd.*, 2009 WL 3076094, at *3 (S.D.N.Y. Sept.28, 2009)). As will be demonstrated below, all of Plaintiff's alter ego claims are nothing more than conclusory allegations and, accordingly, the attachment should be vacated.

**i.      General Principles Surround Alter Ego and "Piercing the Corporate Veil"**

To briefly summarize, "'alter ego' arises 'where a parent company or a principal shareholder totally dominates and controls its subsidiary, operating the subsidiary as its agent." *Jo Tankers v. HGB Logistics, L.L.C.*, 2013 WL 104827, *5 S.D. Tex. Jan. 8, 2013), referring to *United States v. Jon–T Chemicals Inc.*, 769 F.2d. 686, 691 (5th Cir.1985); see also *Gibraltar Savings v. L.D. Brinkman Corp.*, 860 F.2d 1275, 1290 (5th Cir.1988), cert. denied, 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 988 (1989). Critically however, "[t]he alter ego doctrine and piercing of the corporate veil are truly exceptional doctrines, reserved for those cases where the officers, directors or stockholders utilized the corporate entity as a sham to perpetuate a fraud, to shun personal liability, or to encompass other truly unique situations." *Id.* at *5, citing *Subway*

10

*Equip. Leasing Corp. v. Sims (Matter of Sims)*, 994 F.2d 210, 218 (5th Cir.1993).  In order to pierce the corporate veil under this exception to limited liability, Plaintiff must prove both that (1) the separateness between the corporation and the shareholder or parent corporation has ceased to exist and, (2) upholding the separate corporate existence, would, under the circumstances, sanction fraud or promote injustice. *Id.*, citing *Gibraltar Savings*, 860 F.2d at 1290.

Of course, a mere close relationship between two corporate entities is not in and of itself evidence of an "alter ego" relationship.  In fact, the total ownership of all the stock in a corporation or an exercise of the control that stock ownership gives to the shareholder does not mean that the corporation is the alter ego of its shareholder.  *Gibraltar Savings*, 860 F.2d at 1275.  Likewise, a subsidiary does not become the alter ego of its parent merely because of a duplication of some or all of the directors or officers.  *Id.;* see also *Austral Asia PTE, Ltd. V. SE Shipping Lines Pte. Ltd.*, 2012 WL 2567149, *2 (E.D. La. Jul. 2, 2012)("some overlap of ownership, officers, directors, and other personnel, is not unusual in [the shipping] industry").  Instead, the degree of control exercised must be greater than normally associated with common ownership and directorship to raise the question of whether the corporation is the alter ego of its owner.  *Id.; Alpine View Co. Ltd. v. Atlas Copco., AB*, 205 F.3d 208, 219 (5th Cir. 2000).  The significant control necessary to invoke the doctrine of alter ego is "such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal ." *Driving Force Technologies Inc. v. Pan da Inc.*, 2012 WL 1645634, *4 (E.D. Tex May 10, 2012).  In sum, veil piercing is a rare exception to the well-settled American principle of a presumption of separateness between corporate entities.  See *Williams v. McAllister Bros., Inc.*, 534 F. 2d 19, 22 (2d Cir. 1976).

11

With such maxims in mind, it is well-established that a district court, as a court of admiralty jurisdiction, has the power to pierce the corporate veil of a defendant corporation in certain limited instances.  See *Jo Tankers, A.S v. HBG Logistics, LLC*, 2013 WL 104827, *5 (S.D.Tex. Jan. 8, 2013).  However, although case law has developed general rules regarding when a court should exercise its power, each case is *sui generis* and must be judged within its own context.  *Id.*  The law to be applied in such cases is federal common law.  *Id.*

Since each case must be judged on its own facts, no set formula has been created to decide when an alter ego relationship will be found.  However, it is highly significant that in August 2010, Judge Ron Clark of the Eastern District of Texas applied the "twelve factor" alter ego test set out in *Oxford Capital Corp. v. United States*, 211 F. 3d 280 (5th Cir. 2000) to an identical Rule B attachment where a plaintiff (Flame) attempted to attach a vessel owned by a company (Camela) that was reportedly an "alter ego" of **Primera (i.e, the same alleged alter ego of Pasha in this instance)**.  See *Flame, S.A. v. M/V Lynx*, USDC-SDTX Civ. Act. No. 10-cv-278, Doc. 88 "Findings of Fact and Conclusions of Law on Alter Ego."[3] The factors that Judge Clark utilized were **(1)** the parent and subsidiary's common stock ownership; **(2)** common directors or officers; **(3)** common business departments; **(4)** whether the parent and subsidiary file consolidated financial statements; **(5)** whether the parent finances the subsidiary; **(6)** whether the parent caused the incorporation of the subsidiary; **(7)** whether the subsidiary operated with grossly inadequate capital; **(8)** whether the parent pays the salaries and other expenses of the subsidiary; **(9)** whether the subsidiary receives no business except that given by the parent; **(10)** whether the parent uses the subsidiary's property as its own; **(11)** whether the daily operations of

---

[3]  Judge Clark's Opinion was attached to Plaintiff's Verified Complaint as Exhibit 3. To be clear, Pasha was not a party to that litigation.

the tow corporations are kept separate; and **(12)** whether the subsidiary does not observe corporate formalities.

Although Plaintiff has vaguely referred to certain incomplete portions of Judge Clark's "Findings of Fact" in its Verified Complaint in an attempt to buttress its allegations in *this* unrelated proceeding, Plaintiff left out the fact that it was a party to that very action, and that it conducted full discovery on its alleged "alter ego" theories. At the end of that fishing expedition, Judge Clark concluded that there was "insufficient evidence in the record to establish by a preponderance of the evidence that Camela was Primera's alter ego." See Clark Opinion, Pg. 29. Notably, that critical ruling was *not* referenced in Plaintiff's Verified Complaint. Regardless, an identical conclusion is warranted here *vis a vis* the alleged alter ego relationship between Pasha and Primera, because a proper consideration of the *Oxford Capital* factors do not point to any evidence of alter ego.

ii.    The *Oxford Capital* factors do not Demonstrate that an Alter Ego Relationship Existed Between Pasha and Primera

Even if the *Oxford Capital* factors are reconsidered in this instance, Plaintiff still totally fails in its burden to prove an alleged alter ego relationship between Pasha and Primera.  It bears repeating that "to state a *prima facie* claim for alter ego liability, plaintiffs must make **specific** factual allegations from which alter ego status can be inferred; **conclusory allegations are insufficient**." *Oldendorf Carriers GmbH & Co. v. Grand China Shipping (Hong Kong) Co, Ltd.,* 2013 WL 162.8385, *3 (S.D. Tx. March 28, 2013) (Owsley, J.). (emphasis added).  However, the majority of the "facts" that Plaintiff asserts in paragraphs 31 – 64 are nothing more than general conclusory allegations.  Such allegations based upon "information and belief" (See 31-34, 41, 48-51, 54, 58) standing alone totally fail to establish alter ego liability, let alone address the *Oxford Capital* factors.  Many of the other paragraphs (such as 35-43) point to nothing more than

13

a scenario where multiple corporate parties enter into collective financing arrangements, which are perfectly legal in the corporate context.  And other paragraphs (44-46) allege only that Pasha and Primera may have shared a common office address and fax numbers, allegations which do nothing to prove evidence that either entity "dominated" or "controlled" the interests of the other in anyway, let alone a nefarious one.  And in other paragraphs (see 58-63), Plaintiff concedes that Pasha was not even involved in the allegedly nefarious actions of asset concealment reportedly taken by Primera.

In short, all of Plaintiff's allegations of "alter ego" are nothing more that baseless accusations filed with the intent to frustrate Pasha's separate and independent business interests – interests which have now been significantly harmed by the wrongful Rule B attachment of the Vessel herein.  Because Plaintiff has failed to specifically plead anything other than unsupported conclusory allegations in this instance, its Rule B attachment must be vacated.

E. **It is Inappropriate for Plaintiff to have Obtained an Attachment and Thereafter Request that a Ruling on the Alter Ego Claims be Assigned to the Southern District of New York**

Your Honor will recall that Plaintiff has suggested in its Complaint (at Para. 68) that *this* Court essentially suspend any ruling on the "alter ego" issue so that 1) Plaintiff can continue is claim against Pasha in the Southern District of New York, 2) that the ultimate alter ego ruling be issued in the New York action (as opposed to this Court), and 3) that the security obtained in this attachment should stand as security for that potential New York judgment (whenever it is finally issued).  These bold invitations should be rejected by this Court, because to allow Plaintiff to proceed in this fashion would violate the very purpose of the E(4)(f) hearing – which entitles Pasha to a prompt hearing at which time it can attack the sufficiency of Plaintiff's claims.

14

In short, Plaintiff should not be allowed to hold Pasha "hostage" by filing a Rule B in the Southern District of Texas, attaching an incredibly valuable piece of Pasha's property in the district (all the while holding the extremely valuable cargo of innocent third-parties hostage), and then simply allow the property to sit idle as security until such time that the Southern District of New York rules on the very claims that Plaintiff has first asserted before this Court.  Plaintiff has made their vague alter ego allegations here, and those allegations are ripe for challenge – and dismissal – now.  As such, this Court should not allow Plaintiff to use this Court to wrongfully hold property and suggest that the Court cannot consider the very basis of the attachment.

F.     **Plaintiff's Efforts to Seek and *Ex Parte* Order of Attachment Was Wrongful; Requires Vacatur of the Attachment; and Mandates An Award for Costs and Expenses Under the Circumstances**

It is universally accepted by the courts and, in fact, there is a statutory due process requirement under Supplemental Admiralty Rule B that before a Court may issue an *ex parte* order authorizing process of maritime attachment and garnishment, Plaintiff's counsel must submit an affidavit setting forth its efforts to determine the defendant's presence in the district (in this instance, the Southern District of Texas). The plaintiff must make a bona fide effort to find the defendant in advance of the application for an attachment. See MOORE'S FEDERAL PRACTICE, 3d, Vol. 29 §705.04[2][b], n.35. To that end, the plaintiff must use "due diligence" to determine if the defendant is located in the district, and it has a duty to use reasonable efforts to locate a defendant's general agent in a district "before resorting to a Rule B attachment." See *ProShipline*, 2007 WL 4481101 (S.D. Tex., Dec. 18, 2007)(Froeschner, J.).

Here, Plaintiff has not complied with the obligations of Rule B to act with due diligence to locate Pasha's agent. As noted above, on January 9, 2015, at the time Plaintiff made its application for an Order of Attachment, Pasha was clearly "found within the district" and

15

capable of being served through its authorized agent for service of process, a simple fact that could have been discovered and confirmed by way of a five minute search on the Texas Secretary of State's online Corporation Registry database. Additionally, to avoid any doubt, undersigned counsel forwarded all applicable Texas Secretary of State corporate registration information for Pasha to Plaintiff's counsel shortly after the attachment was perfected in order to demonstrate to Plaintiff that Pasha was "within" the District so that Plaintiff's counsel could immediately take the steps to withdraw the Rule B attachment.[4]   That request was denied by Plaintiff, and the matter remains pending.

As such, it is respectfully submitted that Pasha was "found" within the Southern District of Texas for purposes of Rule B, and that Plaintiff was aware or should have been aware of this fact prior to or even shortly after filing its Rule B attachment action. Pasha therefore requests that this Court grant Pasha an award of the costs and expenses it has been forced to incur in bringing this motion. Pasha reserves the right to present proofs of  damages at a later hearing once the Order of Attachment is vacated and the vessel released.

## IV.    **CONCLUSION**

For the foregoing reasons, Pasha respectfully requests that this Honorable Court vacate the attachment of Pasha's vessel and dismiss Plaintiff's Verified Complaint with prejudice. Pasha, in turn, seeks all other equitable relief, including the right to obtain damages from Plaintiff for its wrongful attachment of the vessel and refusal to promptly release the attachment when advised of the facts which abrogate the use of Rule B.

---

[4] See Exhibit "C," January 12, 2015 9:18 am email from Jeremy Herschaft to William Durham.

16

Dated:  January 14, 2015
          Houston, Texas

                                        Respectfully submitted,

                                        **BLANK ROME LLP**

                                        _____
                                        Douglas J. Shoemaker
                                        State Bar No. 00888406
                                        Federal Bar No. 16854
                                        Jeremy A. Herschaft
                                        State Bar No. 24091970
                                        Federal Bar No. 2450990
                                        700 Louisiana, Suite 4000
                                        Houston, Texas 77002
                                        Telephone:  (713) 228-6601
                                        Facsimile:   (713) 228-6605
                                        Email: dshoemaker@blankrome.com
                                        Email: Jherschaft@blankrome.com
                                        Attorney-in-charge for Defendant,
                                        Pasha Finance, Inc. as Owners of the
                                        M/T CAPE TALARA

**OF COUNSEL:**
William R. Bennett
(TO BE ADMITTED PRO HAC VICE)
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-0208
(212) 885-5000
(212) 885-5001 fax

17

## CERTIFICATE OF CONFERENCE

This is to certify that on 14th day of January, 2015 we conferred with counsel for Plaintiff regarding this Motion and confirmed that they are opposed.

_____
Jeremy A. Herschaft

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served pursuant to Federal Rule of Civil Procedure 5 on all counsel of record via the ECF system, facsimile and/or U.S. Mail, on this 14th day of January, 2015.

_____
Jeremy A. Herschaft

18